UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

ROTHSCHILD, et al.,  :  Civil No. 3:09-cv-00144 (FLW)
　　　　　　　　　　　:
　　Plaintiffs,　　　 :
　　　　　　　　　　　:
　　v.　　　　　　　　:  **OPINION**
　　　　　　　　　　　:
FOREMOST INSURANCE COMPANY, et al., :
　　　　　　　　　　　:
　　Defendants.　　　 :
_____ :

**WOLFSON, United States District Judge:**

　　This case involves Plaintiffs Zeev and Bracha Rothschild's ("Plaintiffs" or "the Rothschilds") claim against Defendant Foremost Insurance Company ("Defendant" or "Foremost") seeking damages for an alleged breach of contract. Specifically, Plaintiffs seek the full amount of their policy limit as stated on the Declarations Page of the Foremost Policy. However, if the Court does not award Plaintiffs the full amount of the policy limit, Plaintiffs assert that, at a minimum, they are entitled to a pro rated percentage of the total loss. Additionally, Plaintiffs assert a bad faith claim against Defendant and claims a violation of the New Jersey Insurance Trade Practices Act ("ITPA"), N.J.S.A. 17:29B-4. Presently before the Court are summary judgment motions by both Plaintiffs and Defendant arising from Defendant's decision to reimburse Plaintiffs based upon a proportion of Plaintiffs' insurance policy limit, rather than upon a proportion of the total loss. At the time of the accident giving rise to their insurance claim, Plaintiffs maintained two insurance policies on the property, one issued by Defendant and another issued by Quincy Mutual Fire Insurance Company ("Quincy"). Because Defendant has already tendered Plaintiffs $103,645.39 to satisfy what it believes is its obligations under the Policy,

1

Plaintiffs seek an additional $34,836.25. For the following reasons, the Court grants Plaintiffs' motion for summary judgment in part and denies it in part, and grants in part and denies in part Defendant's motion for summary judgment as follows: Plaintiffs' Motion for Summary Judgment is granted with respect to their breach of contract claim but denied with respect to their bad faith claim and Defendant's Motion for Summary Judgment is granted with respect to Plaintiffs' bad faith and ITPA claim.

## I. Procedural History

On December 5, 2008, Plaintiffs filed a Complaint against Defendant in the Superior Court of New Jersey, Monmouth County, Law Division seeking damages for breach of contract and various violations of the New Jersey State Department of Banking and Insurance Act. After Foremost filed a notice of removal on January 12, 2009, this matter was transferred to the District Court of New Jersey, and was subsequently assigned to this Court. On February 20, 2009, Foremost filed an Answer and Affirmative Defenses denying that it owed Plaintiffs $138,481.64, as opposed to the $ 103,000 that has already been paid to Plaintiffs, under the terms and conditions of its policy. Both Plaintiffs and Defendant filed Motions for Summary Judgment pursuant to the Federal Rules of Civil Procedure 56(c) on May 6, 2009. On May 22, 2009, Plaintiffs filed their Opposition to Defendant's Motion, and on May 26, 2009, Defendant filed its Opposition to Plaintiffs' Motion.

## II. Statement of Facts

The following facts are not in dispute unless otherwise noted. On April 19, 2008, Plaintiffs suffered a total fire loss to their home on the property located at 328 Ocean Avenue, Lakewood, New Jersey ("the Property"). See Def. Statement of Facts ¶ 1. From April 16, 2008 to April 16, 2009, Plaintiffs purchased Foremost Policy No. 381-0067059959-

2

02 ("the Foremost Policy") for the Property. See Exhibit A ("Ex. A"). On the Declarations Page of the Foremost Policy, the amount of insurance listed for Plaintiffs' dwelling is $187,425.00. Id. Plaintiffs also purchased an insurance policy with Quincy, Policy No. FP 306389 ("the Quincy Policy"), to provide concurrent insurance on the Property. See Exhibit B ("Ex. B"). Quincy's limit of liability, as shown on the Quincy Policy Declarations Page, was $154,500.00. After adding both policies together, the total amount of available insurance was $341,925.00.

The relevant sections of the Foremost Policy are as follows:

**Total Loss Payment Method:**

A total loss occurs when the dwelling is damaged beyond reasonable repair.

When a total loss occurs, your loss will be equal to the Amount of Insurance shown on the Declarations Page.

See Ex. A at 10

**Other Insurance:**

SECTION I – Your Property Coverages

If both this and other insurance apply to a loss, we will pay our share. Our share will be the proportionate amount that this insurance bears to the total amount of all applicable insurance.

SECTION II – Your Liability Coverages

This insurance is excess over other valid insurance except insurance written specifically to insure excess over the limits that apply in this section.

Id. at 16.

The relevant sections of the Quincy Policy are as follows:

**Other Insurance:**

If property covered by this policy is also covered by other fire insurance, we will pay only the proportion of a loss caused by any peril insured against

3

    under this policy that the limit of liability applying under this policy bears to the total amount of fire insurance covering the property.

See Ex. B at 8.

  On April 19, 2008, Plaintiffs submitted a claim under both policies for a total fire loss in the amount of $250,800.00. See Def. Statement of Facts ¶ 8. Both Foremost and Quincy stipulated with one another that the loss would be apportioned between the two policies.[1] See Def. Statement of Facts ¶ 9. Under the terms and conditions of their respective policies, each insurer agreed to pay a pro rated percentage to Plaintiffs. The percentages were calculated by dividing each insurer's policy limit into the amount of total available insurance on the Property. Thus, Foremost and Quincy agreed that Foremost would have to pay 55%, which is calculated by dividing its policy limit of $187,425.00 into $341,925.00; the total amount of available insurance on the Property. Likewise, Quincy would have to pay 45%, which is calculated by dividing its policy limit of $154,500 into $341,925.00.[2] Id. Plaintiffs have never objected to the percentage of apportionment between Foremost and Quincy. Id. at ¶ 10.

  On July 11, 2008, Defendant informed Plaintiffs that it would pay $138,481.64, which constituted 55% of the total loss of $250,800.00. See Exhibit C ("Ex. C"). Six days later, after having received no word from Plaintiffs, Defendant sent another correspondence to Plaintiffs retracting their initial offer. See Exhibit D ("Ex. D"). In its second letter to

---

[1] Plaintiffs maintain that Foremost owes the full policy amount of $187,425. See Pl's Motion for Summary Judgment ¶ 5. In the alternative, however, Plaintiffs assert that "Foremost owe[s] ... at a minimum ... $138,481.64 for the damages sustained to Plaintiffs' property as a result of the April 19, 2008 fire." See Pl. Statement of Facts at ¶ 6.

[2] The division does not equate to these exact percentages. In actuality, Foremost would owe 54.81% and Quincy would owe 45.19%. However, both insurance providers agree to round the percentages to 55% and 45%, respectfully.

4

Plaintiffs, Defendant asserted that it had made a "mistake" by offering Plaintiffs 55% of the total loss ($250,800.00) rather than 55% of its policy limits ($187,425.00) and that Plaintiffs should only consider Defendant's offer of $103,645.39 ($103,083.75 plus an additional $541.64 to cover trees and shrubs that were also damaged by the fire). Id. Plaintiffs not only received, but also accepted the payment of $103,645.39 for their loss.[3]

Claiming that they were owed an additional $34,836.25, Plaintiffs filed suit, asserting Defendant breached its contract with Plaintiffs. The crux of this matter is whether Defendant is required to reimburse Plaintiffs based upon a pro rated percentage of the total loss or based upon a pro rated percentage of the policy limit issued to Plaintiffs as shown on the Declarations Page of the Foremost Policy.

**III. Standard of Review**

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56(c). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

---

[3] Although Defendant asserts that Plaintiffs received and accepted the payment of $103,645.39 for the loss, Plaintiffs assert that they accepted the stated amount without waiving any of their rights for the full amount of their loss. See Pl's Statement of Facts ¶ 18. Defendant does not dispute that Plaintiffs' claims are not extinguished here.

(1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Kaucher, 455 F.3d at 423. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Once the moving party has met this burden, the non-moving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. "A non-moving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Moreover, the non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

Moreover, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to

determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the fact finder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## IV. Discussion

### A. Interpreting Insurance Contracts and Policies

Insurance policies are contracts of adhesion and, as such, are subject to special rules of interpretation. Gibson v. Callaghan, 158 N.J. 665, 671 (1999); Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537. The "words of an insurance policy are to be given their plain, ordinary meaning." Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001); Longobardi, 121 N.J. at 537 (1990); Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175 (1992). As stated in Sinopoli v. North River Ins. Co., 244 N.J. Super 245, 251 (App. Div. 1990), "… a court is not permitted, even under the guise of good faith and peculiar circumstances, to alter the terms of an otherwise unambiguous contract." See also Stiefel v. Bayly, Martin & Fay, 242 N.J. Super 643, 651 (App. Div. 1990). Courts are not afforded the luxury to change the language of the insurance policy to create ambiguity. Sinopoli, 244 N.J. Super. at 251. If the policy terms are clear, courts should interpret the policy as written and avoid writing a better insurance policy than the one purchased. Hardy v. Abdul-Matin, 198 N.J. 95, 101 (2009); Longobardi, 121 N.J. at 537 (citing Walker Rogge, Inc. v. Chelsea Title & Guar. Co., 116 N.J. 517, 529, 562 (1989)).

A "genuine ambiguity" exists "only where the phrasing of the policy is so confusing that the average policy holder cannot make out the boundaries of coverage." Botti v. CNA Ins. Co., 361 N.J. Super 217, 224 (App. Div. 2003). When a contract contains ambiguous language and yields two interpretations, it is axiomatic that ambiguities must be resolved

7

in favor of the insured. Gibson v. Callaghan, 158 N.J. 665, 671 (1999) (citing Cruz-Mendez v. ISU/Ins. Serv. Plan of New Jersey, 33 N.J. 98 (1999)). Moreover, when obligated to construe an ambiguous term clause in an insurance policy, courts should consider whether more precise language by the insurer, had such language been included in the policy, "would have put the matter beyond reasonable question." Doto v. Russo, 140 N.J. 544 (1995).

### B. Plaintiffs' claim that Foremost Defendant is liable to Plaintiffs for the Policy Limit fails

Initially, Plaintiffs argue that in accordance with the Foremost Policy, and pursuant to the Total Loss Payment Method which provides coverage equal to the amount of insurance shown on the Declarations Page, Plaintiffs are entitled to the full amount of their policy limit in the amount of $187,425.00. Plaintiffs assert that because they have suffered a total loss, this policy provision applies. However, Plaintiffs' argument disregards the plain language of the clauses at issue here.

The Foremost Policy clearly contains a provision labeled "Other Insurance" which provides that "[i]f both this and other insurance apply to a loss, [Foremost] will pay [their] share. [Their] share will be the proportionate amount that this insurance bears to the total amount of all applicable insurance." See Ex. A at 16. The Policy also states that it is to be declared "excess over other valid insurance except insurance written specifically to insure excess of the limits that apply in this policy." Id. Similarly, Quincy's Policy provides that "[i]f property covered by this policy is also covered by other fire insurance, [Quincy] will pay only the proportion of a loss caused by any peril insured against under this policy that the limit of liability applying under this policy bears to the total amount of fire insurance

covering the property." See Ex. B at 9. The Quincy Policy does not provide that it is primary or excess to other policies.

Again, words of an insurance policy are to be given their plain, ordinary meaning. In the present matter, neither policy declares itself as primary. Instead, both policies contain language dictating that when multiple providers insure the same property, and there is a loss, total or otherwise, of the property, the loss will be pro rated between each provider based upon the amount each policy bears to the total amount of applicable insurance. Thus, both insurers must share in Plaintiffs' loss, and their obligations shall be apportioned on a pro rated basis.

Plaintiffs are not entitled to the full amount listed on the Declarations Page of the Foremost Policy, as the other insurance provisions apply. New Jersey case law has determined that when neither insurance policy is declared as primary, losses must be divided on a pro-rata basis. Ohio Casualty Ins. Co. v. The Estate of Shannon K. Wittkopp, 326 N.J. Super 407 (App. Div. 1999); see Universal Underwriters Insurance Company v. New Jersey Manufacturers Insurance Company, 299 N.J. Super. 307, 315 (App. Div. 1997) ("In summary, since NJM's policy provides UIM coverage for injuries sustained by an insured in an accident with an underinsured motorist, regardless of whether the vehicle the insured is occupying is insured under its policy, and NJM by its policy terms agrees to share in the loss if other insurance is applicable, NJM must participate in the loss").

In the present matter, both Foremost and Quincy agreed that the loss suffered by Plaintiffs should be apportioned between the two policies, with Foremost owing 55% and Quincy Mutual owing 45% to Plaintiffs. See Def. Statement of Facts ¶ 9. Nonetheless, as Plaintiffs assert, what Foremost and Quincy decide among themselves is not binding.

9

However, even if Foremost and Quincy had not stipulated to the pro-rata distribution percentages, the percentages would have been identical to those agreed to, based on the language of the respective policies: "the proportionate amount that this insurance bears to the total amount of all applicable insurance." Traditionally, this type of clause provides that the pro rata liability of different insurers is to be determined by "the ratio each policy bears to the total amount of valid and collectible insurance." 8A J. Appleman & J. Appleman, Insurance Law and Practice, § 4908. Calculating each insurer's pro-rata percentage would leave Foremost reimbursing Plaintiffs 55% ($187,425.00 / $341,925.00) and Quincy reimbursing Plaintiffs 45% ($154,500.00 / $341,925.00). Accordingly, Plaintiffs are not entitled to the entire amount listed on the Declarations Page of the Foremost Policy.

### C. Defendant Foremost's Reimbursement is Based Upon a Percentage of the Total Loss and NOT the Policy Limit

Plaintiffs next argue that if Foremost is not required to reimburse Plaintiffs for the full amount listed on Foremost's Declarations Page, at a minimum, Plaintiffs are entitled to a proportionate amount of the total loss figure. To that end, Plaintiffs contend that Foremost owes Plaintiffs $138,481.64, which is 55% of the total loss they sustained. Foremost, however, argues that it does not owe Plaintiffs a proportionate amount of the total loss figure, but only owes Plaintiffs 55% of its $187,425.00 limit of coverage. As a result, Foremost claims it only owes Plaintiffs $103,645.39, which it already paid to Plaintiffs.

Defendant has not cited, nor is this Court aware of, any cases where an insurer reimbursed the insured based upon a pro rata amount of the policy limit rather than the total loss when there are multiple providers insuring the same property.[4] Instead, case law

---

[4] Defendant instead argues that this is an issue of first impression. See Def. Response to Plaintiffs' Motion at 8, n. 1.

10

concerning the apportionment of losses in an insurance context indicates that the reimbursement should be calculated based upon the total loss and not, as Foremost suggests, the policy limit. In Cargill, INC. v. Commercial Union Ins. Co., the Eighth Circuit held that "[a] 'pro rata' clause provides that where other insurance covers the loss, the 'pro rata' policy covers only some pro rata share of the total loss," 889 F.2d 174, 177 (8th Cir. 1989) (citing 8A J. Appleman & J. Appleman, Insurance Law and Practice, § 4908) (emphasis added). Additionally, Plaintiffs cite Ohio Casualty Ins. Co., 326 N.J. Super. 407 (App. Div. 1999) in support of their contract interpretation, and while the Court recognizes that this case is not exactly on point , namely because the value of the total loss suffered by the plaintiff there was less than the policy limit of one insurer, the other insurance clause in Ohio Casualty is essentially verbatim of the one contained in the Foremost Policy:

> If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectable insurance.

Notably, the Ohio Casualty court did not consider the precise question before this Court, whether the pro rata percentage, which is appropriately computed based on the combined policy limits, is then based upon each individual policy limit or, as advanced by Plaintiffs on this Motion, the actual loss sustained by the insured. Nevertheless, in light of equitable considerations, the court required the insurance providers to share in contributing to the settlement. Id. ("In this case there are two policies, neither of which is primary. Both policies agree to share losses if applicable. The most equitable distribution of the proportion of this loss is on a pro rata basis").

11

Absent New Jersey precedent, the Court has consulted secondary sources which tend to support Plaintiff's argument. The relevant sources in this practice area all come to the same conclusion: that under a pro rata provision, "the insured can recover from each insurance company only its proper share of the loss." 46 C.J.S. Insurance § 1586; see also 15 Couch on Ins. §219:45. While the Court is aware that these provisions do not expressly state "total loss" but rather "loss," the Court is equally aware that these provisions do not expressly state "policy limits," a term used here in connection with "Total Loss." Indeed, "[a] 'pro rata' clause generally provides that if other valid and collectible insurance covers the <u>occurrence in question</u>, the 'pro rata' policy will only cover some pro rata share of the <u>total liability</u>." 8A J. Appleman & J. Appleman, <u>Insurance Law and Practice</u>, § 4908 (emphasis added).

Basic insurance contract principles, and more importantly, New Jersey's policy of favoring the insured in coverage disputes, also counsel this Court's decision. When courts are obligated to construe an ambiguous term or clause in an insurance policy, the courts should consider whether more precise language by the insurer, had such language been included in the policy, "would have put the matter beyond reasonable question." <u>Doto</u>, 140 N.J. 544. Moreover, the principles that guide this Court's interpretation of insurance contracts precludes a reading of the policy that would reduce the term "loss" to surplusage. The "Total Loss" provision of the Foremost Policy makes it abundantly clear that when there is a "Total Loss" suffered by Plaintiffs and Defendant is the only insurance provider, the "Total Loss" will be "equal to the Amount of Insurance shown on the Declarations Page." <u>See</u> Ex. A at 10.  The term "Total Loss," however, is noticeably absent from the ambiguous clause at issue. If Defendant felt so inclined, it could have limited its liability

12

explicitly to the pro rata share of its policy limit by referring to "Total Loss" or the Declarations Page. Instead, Defendant clearly tied its pro rata share of liability coverage to the "loss," without any reference to that "loss" being coterminous with the coverage limits of the policy.

The Court must then refer to the aforementioned clause, Section 6 of the Foremost Policy under the provision labeled "Other Insurance," which is even less clear: "[i]f both this and other insurance apply to a loss, [Foremost] will pay [its] share. [Foremost's] share will be the proportion amount that this insurance bears to the total amount of all applicable insurance." Id. at 16. The operative words in the clause, "loss" and "share" also require this Court's attention. Essentially, what binds the two insurance providers is the loss that Plaintiffs have suffered and the insurers' separate, but concurrent, obligations to insure against that loss. If both insurance providers have agreed to share in the "loss," and neither insurance provider is the primary insurer, it only follows that the "loss" must be something that can be divided amongst the carriers and not, as Defendant contends, separate obligations that may be satisfied by using the carriers' separate and distinct policy limits.

Finally, equitable considerations weigh in favor of Plaintiffs' interpretation. See Ohio Casualty, 326 N.J. at 416 (finding in the insured's favor and applying the "most equitable distribution of the proportion of [the] loss"). Defendant's interpretation of the clause, that it must only pay the pro rata share of its policy limit where there is other insurance, yields inequitable results. In fact, if Plaintiffs were to only receive pro rata shares of the insurance providers' respective policy limits, they would be entitled to a payout of $173,170.69, approximately $14,000 less than what Plaintiffs would be entitled to

13

under the Foremost Policy <u>alone</u>. Certainly, in procuring multiple policies to insure the property, and subsequently paying the corresponding premium payments, Plaintiffs did not intend to receive <u>less</u> coverage than if they had only applied, received, and paid for insurance from Foremost. See <u>Lehrhoff v. Aetna Casualty & Surety Co.</u>, 271 N.J. Super. 340, 347 (App. Div. 1994) (insurance policies are read in conjunction with the policyholders' reasonable expectations). Stated another way, Defendants' interpretation compels a result at odds with Plaintiffs' expectation in securing available coverage for the market value of the property in the case of a total loss. This is not to say that an insurance provider cannot contract with its policyholders in such a way as to provide them with less coverage where multiple carriers insure against the same loss. Rather, in doing so, the insurance provider must be unequivocal and clear in its policy language that the insured is only entitled to a pro rata share of the policy limits, a contractual limitation that could leave the insured in a far worse coverage position than if he had relied solely on insurance coverage from one provider. Nothing in the challenged clause here suggests that Plaintiffs were so forewarned.

   This interpretation is also in keeping with this Court's obligation to construe coverage disputes in favor of the insured and against the provider where an ambiguity arises. Simply put, if Foremost's intention was to reimburse Plaintiffs based only upon a pro rata percentage of the policy limit and not the loss the insured sustained, it should have explicitly included such limiting language in the contract, or alternatively, incorporated the term "Total Loss" as defined by the Declarations Page of its Policy. However, Defendant did not take such action. Accordingly, the Court finds in favor of Plaintiffs and awards Plaintiffs $138,481.64, which is 55% of the total loss value. As Foremost has already paid

14

Plaintiffs in the amount of $103,645.39, Defendant is required to reimburse Plaintiffs an additional amount of $34,836.25.

### D. Plaintiffs' Claim that Foremost Acted in Bad Faith Fails

In Pickett v. Lloyd's, 131 N.J. 457 (1993), the New Jersey Supreme Court enumerated two situations under which an insurance company can be held to have acted in bad faith in the context of a first party claim: (1) "denial of benefits" and (2) "processing delay." The Court reasoned that, like all contracts, an insurance contract contained a covenant of good faith and fair dealing in its performance and enforcement. Id. at 467. Thus, the Court concluded that the insured should have a remedy when the insurer breaches its fiduciary duty to its insured by acting in bad faith. Id.

To prove bad faith, "a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard or the lack of a reasonable basis for denying the claim." Miglicio v. HCM Claim Mgmt. Corp., 288 N.J. Super 331 (1995). "While the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is reckless indifference to facts or to proofs submitted by the insured, neither negligence nor mistake is sufficient to show bad faith." Id. at 342; Pickett, 131 N.J. at 474. Rather, it must be demonstrated that the insurer's conduct is unreasonable and the insurer knows that the conduct is unreasonable, or that it recklessly disregards the fact that the conduct is unreasonable. Id. at 342; Pickett, 131 N.J. at 474.

In the present matter, Plaintiffs assert a claim that Foremost acted with bad faith when it denied benefits set forth in Plaintiffs' contract with Defendant. However, as previously discussed, the contract language is ambiguous. (See Part IV, Section C, supra.)

15

There can be more than one reasonable interpretation of the language in the contract at issue. Defendant asserts that under the clause in the contract labeled "Other Insurance," Foremost agreed to pay its "share" and not "its share of the loss." Foremost's share is then defined in the policy as "... the proportionate amount that this insurance bears to the total amount of applicable insurance." Consequently, Foremost argues that it agreed to pay its proportionate share of all applicable policy limits. While the Court does not agree with Defendant's interpretation of the contract and reads the aforementioned clause as providing the percentage of the loss each provider is responsible for, the Court cannot conclude that Defendant's interpretation of the ambiguous contract was unreasonable. To the contrary, the dearth of case law suggests there is no clearly delineated principle that Foremost recklessly disregarded. The mere fact that the Court holds in favor of Plaintiffs' interpretation of the contract does not show that Defendant lacked a reasonable basis for denying Plaintiffs benefits of the policy. Accordingly, Plaintiffs' claim that Foremost acted in bad faith fails.

### E. Plaintiffs' Claim Under the ITPA Fails

Finally, the Court will address Defendant's Motion for Summary Judgment on Count III, Plaintiffs' claim under the ITPA, codified at N.J.S.A. 17:29B-1 et seq. In its moving papers, Defendants contend that private parties, such as Plaintiffs, may not maintain a cause of action under the ITPA because its enforcement is reserved to the New Jersey Department of Banking and Insurance. In their opposition, Plaintiffs do not contest this general assertion.

Defendant is certainly correct in its observation that the New Jersey Legislature, in passing the ITPA, was primarily concerned with addressing injuries to the public rather

16

than providing individual citizens with another avenue of recovery against insurance providers.  See Pickett v. Lloyd's, 252 N.J. Super. 477, 487 (App. Div. 1991) (citing Pierzga v. Ohio Casualty Group of Insurance Companies, 208 N.J. Super. 40, 47 (App. Div. 1986)). As a result, courts have consistently held that individuals do not have a right to seek redress under the Act.  See, e.g., Pickett, 252 N.J. Super at 487; Pierzga, 208 N.J. Super. at 47; Heumann v. Selective Ins. Co. of America, No. 05-493, 2006 WL 2417286, at *4 (D.N.J. Aug. 4, 2006) ("As stated above, there is no private right of action for violations of the ITPA and Defendant's motion for summary judgment must be granted as a matter of law with respect to Count V").  Accordingly, Plaintiffs' claim under the ITPA is dismissed.

**V. Conclusion**

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is granted in part and denied in part. Specifically, while Plaintiffs' claim for the entire policy limit is denied, Plaintiffs' claim to be reimbursed by Defendant based upon a percentage of the total loss is granted. Moreover, the Court concludes that Defendant's claim was not pursued in "bad faith." Because Plaintiffs have already received and accepted payment in the amount of $103,645.39, it is ordered that Defendant reimburse Plaintiffs the remaining amount of $34,836.25. Additionally, the Court denies Defendant's Motion with respect to Plaintiffs' breach of contract claim, but grants Defendant's Motion with respect to Plaintiffs' claims for bad faith and violation of the ITPA.


Dated: August 31, 2009                                        /s/ Freda L. Wolfson
                                                              FREDA L. WOLFSON
                                                              United States District Judge